STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

LEIF DAUTCH (CABN 283975)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7534
    FAX: (415) 436-7234
    Leif.Dautch@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 20-CR-465 JST |
| Plaintiff, | **UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| JEREMIAH JEFFERSON, | Hearing Date: December 10, 2021 |
| Defendant. | Time: 9:30 a.m. |
| | Judge: Hon. Jon S. Tigar |

## I. INTRODUCTION

Defendant Jeremiah Jefferson appears before this Court for sentencing having pleaded guilty to Count One of the Information charging him with being a felon in possession of a firearm. PSR ¶¶ 1-2; Dkt. No. 75 (Plea Agreement). Jefferson, a twice-convicted felon, was found with a fully-loaded semiautomatic handgun after a hit-and-run car accident in Richmond, California. Jefferson's firearm was linked to shell casings recovered at the scenes of two Bay Area shootings in the days before his arrest, one of which sent a victim to the hospital. Jefferson's possession of a loaded firearm, the use of that firearm in multiple shootings, and Jefferson's escalating criminal history are of grave concern. Accordingly, the government respectfully recommends that the court impose a sentence of 27 months' imprisonment, three years of supervised release, a $100 special assessment, and forfeiture.

## II. BACKGROUND

### A. Offense Conduct

On the night of April 22, 2020, Richmond Police Officers responded to a report of a hit-and-run car accident. PSR ¶ 6. The caller stated that a vehicle with tinted windows had attempted to enter an apartment building's parking lot, smashed through the security gate, crashed into two parked cars, and drove off. Officers responded to the scene, observed the damage, and saw gouges in the roadway leading away from the damaged cars. Officers followed the trail of gouges and located a black Infiniti sedan with tinted windows that was not moving, but had the engine running. The Infiniti had major front-end damage and two flat tires. *Id*.

Officers looked inside the Infiniti and saw a single occupant, Jeremiah Jefferson, passed out in the driver's seat. PSR ¶ 7. Officers knocked on the driver's window, but Jefferson did not respond. Officers then shined a flashlight into the vehicle and saw a semi-automatic firearm wedged between the driver's seat and the center console. Upon seeing the firearm, officers opened the driver's side door and detained Jefferson. *Id*.

Officers seized the firearm from inside the car. PSR ¶ 8. The Taurus 9mm handgun was fully loaded with a 12-round magazine and a 13th bullet in the chamber. The safety lever on the gun was off. Jefferson admitted that the damaged black Infiniti was registered to him, stated that he had recently taken a Xanax, acknowledged that he was on probation, but claimed that the firearm was not his. *Id*.

The firearm recovered from Jefferson's car was test-fired, and the shell casings were entered into the National Integrated Ballistic Information Network (NIBIN) for possible connections to other criminal activity. PSR ¶ 9. This technology:

> [C]reates high-resolution, digital images of the unique markings left by a firearm on expelled cartridge cases. NIBIN automatically compares captured images of these markings to all other entered casings in a specific geographic region or nationwide. The computerized process provides potential matches within hours, which are then reviewed by trained NIBIN technicians to make a final match determination. Through this process, NIBIN provides the ability to link shootings by ballistic evidence and link recovered crime guns to shootings.

The National Crime Gun Intelligence Governing Board, *Crime Gun Intelligence: Disrupting the Shooting Cycle* (Aug. 2018), https://crimegunintelcenters.org/wp-content/uploads/2018/09/CGI-

Manual-Best-Practices-ATF-27-AUG-18.pdf; PSR ¶ 10.

Using the NIBIN database, agents connected the loaded firearm seized from Jefferson to shell casings recovered from two shootings in the days before Jefferson's arrest: one in San Francisco on April 16, 2020, and one on the I-580 Highway near Castro Valley on April 18, 2020.  PSR ¶ 11.

The San Francisco shooting involved a person in a black Infiniti sedan (the same make and color as Jefferson's car) shooting at a victim in a white car that was driving behind it.  PSR ¶ 12.  The victim, who had injuries from being struck by broken glass from the gunfire and was transported to the hospital, reported the incident to police and believed the shooter mistook her for someone else.  A microscopic ("toolmark") analysis conducted by the SFPD Crime Lab confirmed that Jefferson's gun was used in the San Francisco shooting.  *Id*.  The Castro Valley incident involved two vehicles shooting at each other while driving at high rates of speed on I-580.  Several nearby cars were struck by gunfire, including one person whose back window was shattered.  Both shootings are open investigations, and it has not been determined whether or not Jefferson was involved in either shooting.  The government notes that, unlike the San Francisco shooting, none of the cars involved in the Castro Valley highway shooting matched the description of the black Infiniti sedan in which Jefferson was arrested.  *Id*.

### B. Jefferson's Criminal History

In the two years leading up to the charged conduct, Jefferson had three convictions in San Francisco that each resulted in jail time:

- November 1, 2018 conviction for felony burglary (12 months jail)
- January 3, 2019 conviction for misdemeanor burglary (6 months jail)
- July 1, 2019 conviction for felony burglary (18 months jail)

Jefferson was on probation when he committed the second and third of these burglaries, and he was also on probation at the time of the instant offense.  Jefferson has been arrested at least seven other times, including for unlawful firearm possession:

- July 17, 2016 arrest for burglary
- March 12, 2017 arrest for resisting or obstructing an officer
- May 11, 2017 arrest for attempted burglary and resisting or obstructing an officer
- August 3, 2017 arrest for burglary
- September 25, 2017 arrest for burglary
- April 7, 2019 arrest for burglary
- January 11, 2020 arrest for possession of a firearm with a large capacity magazine

### C. PSR and Applicable Guidelines Calculation

On August 13, 2021, Jefferson pleaded guilty to Count One of the Information charging him with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). PSR ¶ 2; Dkt. No. 75. In the Plea Agreement, the parties agreed that the Total Offense Level was 12; Probation reaches the same figure. PSR ¶ 3. The parties reached no agreement on Jefferson's Criminal History Category, but the government agrees with Probation's determination that Jefferson is CHC VI. PSR ¶ 35. With a Total Offense Level of 12, and a Criminal History Category VI, the applicable Guidelines range is 30-37 months. Because the Guidelines range falls in Zone D of the Sentencing Table, the minimum term must be satisfied by a term of imprisonment. PSR ¶ 64. Probation has recommended a sentence of 12 months' imprisonment. As detailed below, the United States recommends a sentence of 27 months.

## III. DISCUSSION

### A. Applicable Law

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines. *Id*. After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;

(5) the need to provide restitution to any victims of the offense.

**B.     A sentence of 27 months is warranted under 18 U.S.C. § 3553(a).**

Mr. Jefferson's conduct in this case, and his possession of a firearm that was used in two shootings shortly before his arrest, is deeply concerning. The facts surrounding the charged incident and the uncharged shootings, Jefferson's recidivist history, and the failure of prior short custodial sentences to deter his criminal conduct all warrant a sentence of 27 months' imprisonment.

**1.     Nature and Circumstances of the Offense**

As detailed in the PSR, Mr. Jefferson's offense conduct is very serious. Jefferson drove under the influence of narcotics, smashed through the security gate of an apartment complex, crashed into two parked cars, and drove away, all with a fully-loaded semi-automatic handgun—with the safety off—at his ready disposal. These actions evinced a clear disregard for the safety of the community. But even more alarming, Jefferson's firearm was linked via NIBIN in two shootings in the Bay Area in the preceding days. A microscopic toolmark analysis confirmed his gun's use in the San Francisco shooting, in which a female driver—apparently mistaken for someone else—was fired upon, injured by broken glass from the gunshots, and transported to the hospital for lacerations. Jefferson's possession, just days later, of a gun used in that type of shooting shows, at the very least, that he associates and transfers firearms with shooters.

The context for Jefferson's criminal conduct is also important. Gun violence and homicides have been increasing at alarming rates throughout the Bay Area. San Francisco recently reported a 95% increase in gun violence this year. *See Deadly spate of shootings in S.F.: 4 killings in 5 days*, San Francisco Chronicle, Aug. 17, 2021, https://www.sfchronicle.com/bayarea/article/Deadly-spate-of-shootings-in-S-F-4-killings-in-16394205.php. The East Bay has seen a similar increase. Since 2019, Oakland has seen increases of 79% for gun homicides, 110% for gun assaults, 111% for shootings at an occupied building or vehicle, and 163% for negligent discharges of a firearm. *See Gun violence in Oakland has become a "pandemic within the pandemic." Here's what's going on*, San Francisco Chronicle, Dec. 3, 2021, https://www.sfchronicle.com/crime/article/Gun-violence-in-Oakland-has-become-a-pandemic-16670919.php. Against this backdrop of exploding gun violence, Jefferson's possession and either use or transfer of weapons involved in shootings warrants a significant sentence.

A 27-month term of imprisonment would adequately reflect the seriousness of Jefferson's conduct, promote respect for the law, and provide just punishment for his crime. 18 U.S.C. § 3553(a)(2)(A)-(C).

### 2. History and Characteristics of the Defendant, and Need for Deterrence

Jefferson's criminal history also supports a 27-month sentence. As his past crimes show, this offense was not an isolated event. He has three prior convictions, including two felonies, and has previously been sentenced to terms of imprisonment of 18 months, 12 months, and six months. He has numerous other arrests, including for resisting or obstructing police officers and possessing a firearm with a large capacity magazine. He has repeatedly demonstrated a refusal to comply with court supervision, committing his second and third offenses of conviction—not to mention the instant offense—while on probation.

The government is sympathetic to Jefferson's difficult childhood and cognitive issues, which may have contributed to his poor decision-making here. PSR § 46-48, 56. That is why the government has proposed a modest downward variance from the Guidelines range. But the government ultimately has an obligation to advocate for the safety of the public and to address the current epidemic of gun violence to the extent possible. As such, the government believes that a significant custodial term is needed to specifically deter Jefferson from possessing dangerous firearms in the future and to generally deter other convicted felons who would take up such weapons. *See* 18 U.S.C. § 3553(a)(2)(B).

## IV. CONCLUSION

With full consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court impose a sentence of 27 months' imprisonment, three years of supervised release, a $100 special assessment, and forfeiture of the firearm and ammunition.

DATED: December 3, 2021

Respectfully submitted,

STEPHANIE M. HINDS
Acting United States Attorney

*/s/ Leif Dautch*
LEIF DAUTCH
Assistant United States Attorney